IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HAMEED ALBURKAT, *et al.*,

    Plaintiffs,

v.

WORLDPAY US, INC.,

    Defendant.

CIVIL ACTION NO.
1:16-CV-03627-AT

## **ORDER**

This commercial contract matter is before the Court on Defendant Worldpay US, Inc.'s ("Worldpay") Renewed Motion to Dismiss [Doc. 11]. Plaintiffs Hameed Alburkat ("Alburkat") and Alghadeer Bakery & Market, Inc. ("the Bakery") filed suit against Worldpay for allegedly breaching the contract between Worldpay and the Bakery, by which the Bakery agrees to pay certain fees to Worldpay in exchange for credit card processing services. Plaintiffs assert three contract claims against Worldpay, all related to Worldpay's allegedly improperly charging the Bakery for fees not consistent with the contract and without giving the Bakery proper notice of such fees. They also seek to bring these claims as a class action against Worldpay. Alburkat is the owner of the Bakery and, as the principal guarantor for the Bakery in the contract, he is suing on the grounds that he may be personally obligated if Worldpay tries to collect

monies under the contract provisions at issue and beyond what the Bakery can pay.

Under Federal Rule of Civil Procedure 12(b)(6), Worldpay moves to dismiss Counts 1 and 3 of Plaintiffs' Amended Complaint, as well Count 2 in part. It also moves to dismiss all of Alburkat's claims based on lack of standing. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Worldpay's Motion to Dismiss.

## I. LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 570).

## II. BACKGROUND

The following factual summary presents the facts as alleged in Plaintiffs' Amended Complaint.

The Bakery consists of a small market and bakery located in Detroit, Michigan. In December 2013, an authorized sales representative for Worldpay approached Alburkat, the principal owner of the Bakery, about the potential savings that the Bakery could realize if it switched to Worldpay for payment processing. The sales representative presented Alburkat with a three-page Customer Processing Agreement ("CPA"),[1] and he explained that the Bakery would pay lower rates under the CPA than it was paying at the time. The CPA includes a "Cost Plus Pricing" section, which shows that the customer (the Bakery) would be charged standard fees by the card networks (i.e., Visa, Mastercard, Discover, and Paypal) for each transaction, as well as additional payment processing fees by Worldpay. The CPA also lists other types of fees, such as "per occurrence fees" and "monthly recurring fees."

---

[1] Plaintiffs refer to the CPA in their Amended Complaint without attaching it, yet Worldpay attaches the signed CPA to its Motion to Dismiss. (Doc. 11-2.) The parties do not dispute the authenticity of the signed CPA. Thus, even though the CPA is not attached to the Amended Complaint, the Court may consider the CPA for purposes of this motion to dismiss since it is central to Plaintiffs' claims and is undisputed. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). The parties do dispute, however, a separate document referred to as the CPA Terms as discussed below.

3

Alburkat was satisfied with the terms as stated in the CPA and signed it on December 18, 2013. In the section above Alburkat's signature, entitled "Customer Acceptance and Guaranty," the CPA states:

> BY SIGNING BELOW, I (1) AGREE TO THE WORLDPAY US, INC. TERMS AND CONDITIONS FOR CUSTOMER PROCESSING AGREEMENT (THE "CPA TERMS"), AND (2) ACKNOWLEDGE THAT WORLDPAY'S SALES REPRESENTATIVE HAS DELIVERED A COPY OF THE CPA TERMS TO ME.

(Doc. 11-2 at 3.) Despite signing underneath this statement, Alburkat alleges that the sales representative did not provide him with the CPA Terms. (Am. Compl., Doc. 3 ¶ 29.) The Court refers to the CPA together with the CPA Terms as "the Agreement."

Over the course of Plaintiffs doing business with Worldpay, Worldpay allegedly charged fees to the Bakery that were either in excess of or outside the Agreement entirely. Specifically, Plaintiffs contend that Worldpay charged card network fees, transactional fees, and certain recurring fees that were higher than the amounts set forth in the Agreement; that it charged an annual fee not disclosed in the Agreement; and that it charged fees for American Express transactions even though the Bakery opted out of such fees per the Agreement. Plaintiffs further contend that Worldpay failed to provide them with advance notice of these new or increased charges. They estimate they had paid "hundreds (if not thousands) of dollars" in improper charges to Worldpay before discovering the charges.

As a result, Plaintiffs attempted to terminate the Agreement with Worldpay. They were subsequently informed in writing that, in order to terminate the Agreement at that time, they would be required to pay $495 for an early termination fee and $260 for Worldpay's expected loss of income through the end of the contract term. Plaintiffs have thus far refused to pay the early termination and lost income fees (referred to collectively as "early termination fees").

On August 26, 2016, Plaintiffs filed suit against Worldpay in state court, and Worldpay removed the case to this Court nearly a month later. Plaintiffs assert three counts against Defendant: (1) that four terms of the Agreement are unenforceable as a matter of law and the Court should declare them as such; (2) that Worldpay breached the Agreement as well as the covenant of good faith and fair dealing by assessing improper charges to the Bakery and not providing proper notice; and (3) that, alternatively to Count II, if the Court finds the Agreement to be void or unenforceable, Plaintiffs are entitled to restitution for Worldpay's unjust enrichment under the Agreement.

### III. DISCUSSION

Worldpay moves to partially dismiss the Amended Complaint. It seeks to dismiss Counts 1 and 3 and Count 2 in part. It also seeks to dismiss Alburkat from the case based on lack of standing. Thus, even if the Court granted Worldpay's motion to dismiss in full, the Bakery would still proceed with part of Count 2 (the breach of contract claim) against Worldpay.

The Court first addresses standing as to Alburkat. The Court then addresses part of Count 2 regarding breach of contract and early termination fees, followed by Counts 1 and 3 regarding the enforceability of the Agreement.

**A. Alburkat's Standing in This Case**

Worldpay argues that Alburkat lacks standing to sue Worldpay in this matter because he is not a party to the Agreement and is simply the guarantor for the Bakery. This means that he is only personally obligated under the Agreement in the event that the Bakery cannot pay Worldpay. Furthermore, because Alburkat has not paid anything under the guaranty provision and "faces no pending claim," Worldpay argues that he has not suffered any injury, nor is there any impending injury, as is required to establish standing. Worldpay contends that Alburkat merely alleges the "potential" that he could be held responsible for "some unidentified default on the part of Alghadeer Bakery at some undetermined point in the future," and this is insufficient for standing.

Plaintiffs counter that Alburkat does have standing because there is an impending threat of injury to Alburkat. As an example, Plaintiffs point to Section 11.4 of the Agreement, which requires the Bakery to pay Worldpay's legal fees and expenses whenever Worldpay retains legal counsel to enforce the Agreement. They assert that this provision has already triggered the Bakery's obligation to pay Worldpay's legal fees. And because the Bakery cannot afford to pay these fees (whatever sum this may be), this provision has also triggered Alburkat's obligation to pay.

In a diversity action such as this one, the Court applies state substantive law and federal procedural law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The question of whether a guarantor, a non-party to the contract, has standing to sue under the contract is a substantive question. *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007) ("The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law."); *see also Cook v. Trinity Universal Ins. Co. of Kansas*, 297 F. App'x 911, 913–14 (11th Cir. 2008). Therefore, state law applies here, and the parties do not dispute that Georgia law in particular governs the Agreement. (Am. Compl. ¶ 95; Def.'s Motion, Doc. 11 at 10 n.5.)

Under Georgia law, a plaintiff "must establish standing to sue on the ground asserted, which requires showing an injury in fact that was caused by . . . the defendants to the plaintiffs and that will be redressed by a favorable decision from the court." *Ames v. JP Morgan Chase Bank, N.A.*, 783 S.E.2d 614, 619 (Ga. 2016). When a plaintiff brings a breach of contract claim, the law is clear that "a person who is not a party to a contract, or an intended third-party beneficiary of a contract, lacks standing to challenge or enforce a contract." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1251 (11th Cir. 2015) (interpreting O.C.G.A. § 9–2–20(a))[2]. Courts interpreting Georgia law have found this to mean that, where a

---

[2] O.C.G.A. § 9-2-20 states:
    (a) As a general rule, an action on a contract, whether the contract is expressed, implied, by parol, under seal, or of record, shall be brought in the name of the

7

corporation enters into a contract with another party, the individual owner of that corporation does not have standing to sue for breach of contract if he is not a party to the contract – even if he is the guarantor for the corporation.

In *Canton Plaza, Inc. v. Regions Bank, Inc.*, a corporation had entered into a commercial loan agreement with a bank to purchase a shopping center, and the individual owner of the corporation agreed to be the guarantor for the corporation. 732 S.E.2d 449, 452 (Ga. Ct. App. 2012). When the corporation later failed to pay the entire loan amount, the bank initiated foreclosure proceedings, and the corporation and the owner then filed suit against the bank for breach of contract and wrongful foreclosure. *Id.* at 453. The case proceeded to trial, where the trial court entered a directed verdict in favor of the bank. *Id.* On appeal, the Georgia Court of Appeals affirmed the trial court's decision, in part because the individual owner "was not a party to [the] contracts [at issue]," and therefore he "was not entitled to pursue the breach of contract claim. . . . Nor was [he] entitled to pursue a claim for wrongful foreclosure." *Id.* at 454-55. (citing to OCGA § 9–2–20(a)).

In *Snead v. Garner Racing, LLC*, the magistrate judge cited to *Canton Plaza* in support of his recommendation that the district court dismiss the case. No. 115CV01947SCJGGB, 2015 WL 12089611, at *2 (N.D. Ga. Aug. 3, 2015). The plaintiff claimed to own certain property and had sued the defendants for various

---

party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent.
(b) The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract.

claims, including wrongful foreclosure of the property. *Id.* at *1. The notice of foreclosure, however, showed that the plaintiff was not the owner but was "merely a guarantor of the corporation that owned the property." *Id.* at *2. Accordingly, the magistrate judge found that he lacked standing under Georgia law. *Id.* The plaintiff was not a party to the promissory note or security deed executed in connection with the mortgage loan, nor was he an intended beneficiary of these. *Id.* The district court subsequently adopted the magistrate judge's report and recommendation and dismissed the case. *Snead v. Garner Racing, LLC*, No. 115CV01947SCJ (N.D. Ga. Aug. 25, 2015) (Doc. 6.)

Plaintiffs cite to several cases in support of their position that Alburkat has standing, but these cases are inapposite. (Pls.'s Response, Doc. 14 at 24.) These cases all involve a guarantor in the position of *being sued* for breach of contract, not in the position of *suing*. In this context, the courts rightfully held that a defendant guarantor could assert defenses under the contract. But these cases do not support Plaintiffs' argument that a guarantor has standing to sue affirmatively for breach of contract where the guarantor is not even a party to the contract.

Here, Plaintiffs merely allege that Alburkat is a guarantor for the Bakery under the Agreement. They do not allege that he is a party to the Agreement or an intended beneficiary of it, and they do not allege facts otherwise showing this to be true. *See* O.C.G.A. § 9-2-20. Even if the alleged facts did show that Alburkat was a party to the Agreement, they do not show that he has suffered any

"injury in fact." *See Ames*, 783 S.E.2d at 619. Plaintiffs do not assert that Alburkat has actually made payments in his individual capacity under the Agreement, nor do they assert that the Bakery has defaulted and Worldpay is about to hold him liable. Thus, the Amended Complaint fails to show that Alburkat has standing to sue Worldpay for breach of contract. The Court **DISMISSES WITHOUT PREJUDICE** Alburkat's claims against Worldpay. The Court now turns to the Bakery's claims against Worldpay.

### B. Count 2: Breach of Contract Only as to Early Termination Fees

Worldpay seeks to dismiss the Bakery's breach of contract claim only as it relates to the recovery of early termination fees.[3] The Amended Complaint alleges that Worldpay advised the Bakery it was required to pay certain early termination fees to terminate the Agreement, but the Bakery refused to pay these fees because they were higher than ones set forth in the Agreement. (Am. Compl. ¶¶ 56-57.) Worldpay argues that, to the extent the Bakery is claiming breach of contract based on early termination fees that it never paid, this claim should be dismissed because the Bakery did not suffer any damages. The Bakery must allege damages in order to state a breach of contract claim on this basis.

---

[3] The fees that remain at issue in Count 2 are as follows: (1) card network fees, transactional fees, and certain recurring fees that were higher than the amounts set forth in the Agreement; (2) an annual fee not disclosed in the Agreement; and (3) fees for American Express transactions even though the Bakery opted out of such fees per the Agreement. (Am. Compl., Doc. 3 ¶¶ 51-54.) Plaintiffs allege that Worldpay failed to provide advance notice of these new or increased fees before charging Plaintiffs for them.

The Bakery responds that it does not seek recovery of early termination fees that it refused to pay as part of its breach of contract claim. Instead, it seeks recovery of all other fees that it continued to pay after Worldpay demanded that it pay inflated early termination fees. In other words, it appears that the Bakery claims Worldpay breached the Agreement by trying to charge it inflated early termination fees as a prerequisite to terminating the Agreement. Because the Bakery was unwilling to pay these inflated fees, the Bakery asserts that it suffered damages by having to stay in the Agreement and keep paying Worldpay for services provided after that point. Alternatively, the Bakery claims that Worldpay was unjustly enriched by these continued payments. Worldpay does not respond to this argument in its Reply.

The parties are arguing about two different sets of potential damages with respect to the early termination fees. One set of potential damages is the early termination fees themselves, which Worldpay requested from the Bakery and the Bakery never paid. The other set of potential damages is the fees that the Bakery continued to pay to Worldpay after it decided not to terminate the Agreement, so as to avoid paying the allegedly inflated early termination fees.

The first set of potential damages, the early termination fees, appears to be a non-issue. The Bakery makes clear in its Response that it does not actually seek to recover these unpaid fees. Thus, the Court **DENIES AS MOOT** Worldpay's Motion to Dismiss Count 2 for this limited purpose.

The second set of potential damages, the fees that the Bakery continued to pay after it tried to terminate the Agreement, do not support a breach of contract claim. The Bakery has not alleged facts showing that it suffered actual damages as a result of its exchange with Worldpay – specifically, when Worldpay allegedly demanded inflated early termination fees and the Bakery then remained in the Agreement to avoid paying them. Rather, the Bakery merely alleges that it continued to pay Worldpay for the services provided under the Agreement after the Bakery tried to terminate the Agreement. Just as Worldpay was providing services as usual during this time, the Bakery was obligated to pay for services as usual. The Bakery does not allege, for example, that it would not have incurred these processing costs if it was using a payment processor other than Worldpay. And to the extent that Worldpay was charging the Bakery with some improper or inflated fees during this time, in addition to other regular fees, the Bakery's Count 2 already encompasses any alleged damages from improper or inflated fees. There are no allegations showing that the Bakery suffered additional damages because it remained in the Agreement. The Bakery cannot seek double recovery for the same allegedly improper charges.

Thus, the Court **GRANTS** Worldpay's Motion and **DISMISSES IN PART** Count 2. Specifically, the Court dismisses the Bakery's claim that Worldpay breached the Agreement by demanding inflated early termination fees, and that the Bakery suffered damages as a result by continuing to pay for services under the Agreement.

### C. Counts 1 and 3: Enforceability of Specific Terms and the Agreement as a Whole

In Count 1, the Bakery claims that four provisions of the Agreement are unenforceable as a matter of law:

1. giving Worldpay the right "to modify, amend, or supplement the fees set forth" in the Agreement for any reason (or no reason at all) (CPA Terms § 11.9);
2. limiting the statute of limitations for obtaining reimbursement for Worldpay overcharges to 30 days (*Id.* § 7.5);
3. limiting the total amount of Worldpay's liability to three months of fees (*Id.* § 9.3); and
4. requiring merchants to pay WorldPay's attorney fees whenever it "employs legal counsel," regardless of whether WorldPay wins or loses a subject dispute (*Id.* § 11.4).

(Am. Compl., Doc. 3 ¶ 85.) In Count 3, the Bakery claims that it is entitled to restitution for unjust enrichment if the Court finds the entire Agreement (not just the four provisions) to be unenforceable.

Both Counts 1 and 3 require the Court to examine the specific provisions of the Agreement, which includes the three-page signed CPA and the CPA Terms. The Bakery's Amended Complaint refers to the CPA and provisions of the CPA Terms but does not attach either document. Worldpay does attach the CPA to its Motion to Dismiss, and it also attaches two versions of the CPA Terms (referred to as "4/13" and "10/13"). The Court may consider a document outside the four corners of a complaint on a motion to dismiss, even if it is not attached to the complaint, "if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *accord Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for*

*Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Here, however, the parties dispute which version of the CPA Terms governs in this matter.[4]

The Bakery's Amended Complaint alleges that it entered into the Agreement with Worldpay on December 18, 2013, and subsequently it received a version of the CPA Terms labeled "04/13" (presumably April 2013).[5] The Bakery points out, however, that a more recent version of the CPA Terms labeled "10/13" (presumably October 2013) was available online, and so the more recent version ought to govern. (Am. Compl., Doc. 3 ¶ 29.) Moreover, in its Response, the Bakery attached two more versions of the CPA Terms that it found somewhere, referred to herein as "V08242011" and "31472v5." (Pls.'s Response, Docs. 14-1, 14-2.)

Worldpay responds by noting that the signed three-page CPA includes the number "31775v3 (04/13)" in the bottom right-hand corner of the document. Worldpay argues that this reference shows that the CPA Terms that accompany the CPA are the "04/13" version, and therefore this version governs. Worldpay also emphasizes that the Bakery cites to version "31775v3" of the CPA Terms in its Amended Complaint, and by doing so, the Bakery has impliedly consented to that version as the governing version. Alternatively, Worldpay argues that even if the Court considers all four versions of the CPA terms, the terms are not

---

[4] The parties do not dispute the authenticity of the three-page signed CPA.
[5] As stated earlier, the Bakery alleges that Worldpay's sales agent did not provide it with a copy of the CPA Terms on the day that Alburkat signed the Agreement, despite Alburkat signing beneath a statement saying otherwise.

materially different and therefore it does not matter which version governs for purposes of the Motion to Dismiss.

There is no dispute that the CPA Terms are central to Counts 1 and 3, but the Court currently has four different versions of the CPA Terms before it. The authenticity of the CPA Terms is clearly in dispute. The Court cannot consider a disputed document outside the Amended Complaint on a motion to dismiss. *See, e.g.*, *Mt. Hawley Ins. Co. v. Pallet Consultants Corp.*, No. 06-61763-CIV, 2009 WL 395335, at *3 (S.D. Fla. Feb. 17, 2009) (denying a motion to dismiss where plaintiff and defendant attached different versions of the contract at issue since the contract was "clearly not undisputed"). In theory, the Court could find otherwise if the four versions were not materially different, but that is not the situation here.

While a substantial portion of the four versions appears to be identical, there is at least one potentially material difference among them. In versions "04/13," "10/13," and "31472v5," the entire text under Section 9.3 entitled "Limitations on Liability" is capitalized. This has the effect of drawing the reader's attention since the surrounding sections are not capitalized. Yet in version "V08242011," Section 9.3 is not capitalized and blends in with the surrounding text. This variance, though seemingly minor, is consequential to Count 1. The Bakery claims that Section 9.3 on limited liability is unenforceable, and part of that assessment is whether Worldpay complied with Georgia law that

requires such provisions to be set off from surrounding provisions. (*See* Pls.' Response, Doc. 14 at 11 n.5 and 15.)

More broadly, Count 3 asks the Court to determine whether the Agreement as a whole – including the CPA and the CPA Terms – is unenforceable. This requires the Court to look beyond just the four provisions at issue in Count 1 and at potentially all of the provisions in the CPA Terms. The parties have not sufficiently addressed whether the four versions of the CPA terms are materially different overall, and the Court is not comfortable making that assessment at this early stage. This is particularly true given that the governing version of the CPA Terms is key to the Court's assessment of Count 1 as well as Count 3.

Therefore, because the Court cannot consider the underlying CPA Terms for purposes of a motion to dismiss, the Court **DENIES** Defendant's Motion as to Counts 1 and 3. Rather, the Court notifies the parties of its intent to treat this motion as a motion for summary judgment as to Counts 1 and 3. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). To ensure that the parties have an adequate opportunity to present pertinent material and such material is conveniently presented to the Court, the Court **GRANTS** the parties leave to commence limited, expedited discovery to begin immediately upon entry of this Order and concluding no later than July 21,

2017. Discovery will be limited to determining which version of the CPA Terms governs in this matter.

Yet before summary judgment briefing begins for this limited purpose, the Court notes that the claims in this case appear to be resolvable.[6] Therefore, at the end of the limited discovery period, this case is **REFERRED** to the next available Magistrate Judge for mediation. Mediation shall conclude no later than August 21, 2017. The parties are **DIRECTED** to notify the Court within five days of the conclusion of mediation.

If mediation fails, Worldpay is **DIRECTED** to file a motion for summary judgment renewing its arguments regarding Counts 1 and 3. Worldpay shall file the motion for summary judgment, evidence in support of the converted motion for summary judgment, and its Statement of Material Facts by September 19, 2017. The Bakery shall file its response brief by October 9, 2017. The Bakery must file its Response to Defendant's Statement of Material Facts and Additional Statement of Material Facts as well as any relevant materials which it wishes to be considered in opposition to the motion for summary judgment. Worldpay shall file its reply brief by October 23, 2017.

## IV. CONCLUSION

For the foregoing reasons, Worldpay's Motion to Dismiss [Doc. 11] is **GRANTED IN PART** and **DENIED IN PART**. The Court grants the Motion by dismissing without prejudice Alburkat's claims against Worldpay for lack of

---

[6] In particular, the Bakery's damages appear limited outside the context of a class action, and a class action may not be the appropriate vehicle for litigating the claims as alleged.

standing.  With respect to Count 2: the Court denies the Motion as moot regarding the recovery of unpaid early termination fees, and the Court grants the Motion regarding the recovery of fees for services provided after the Bakery tried to terminate the Agreement.  With respect to Counts 1 and 3: the Court denies the Motion and treats the current Motion to Dismiss as a Motion for Summary Judgment.

As discussed herein, the parties are to proceed with limited discovery on Counts 1 and 3 before engaging in mediation, and they will only proceed to summary judgment on Counts 1 and 3 if mediation fails.  The parties shall also proceed with full discovery on the remainder of Count 2 before engaging in mediation.

**IT IS SO ORDERED** this 6th day of June, 2017.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**