## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Alghadeer Bakery & Market, Inc.,

                    Plaintiff,      Case No. 1:16-cv-03627

v.                            Michael L. Brown
                                 United States District Judge

Worldpay US, Inc.,

                    Defendant.

_____/

## OPINION AND ORDER

This commercial-contract dispute is before the Court on Defendant Worldpay US, Inc.'s Motion for Partial Summary Judgment. (Dkt. 26). For the reasons below, the Court grants that motion.

### I. Background

Plaintiff is a bakery in Michigan. Dkt. 3 at ¶ 14. Defendant is a payment-processing company. *Id.* at ¶ 9. The parties entered into a contract known as a Customer Processing Agreement – or CPA – in which Defendant agreed to provide payment-processing services for Plaintiff's credit-card transactions and Plaintiff agreed to pay Defendant various fees. (Dkts. 23; 26-2). Pretty quickly into their relationship, Plaintiff

believed Defendant was charging excessive fees, so Plaintiff tried to terminate the CPA. Dkt. 3 at ¶¶ 45-67. Defendant refused. *Id.* at 55-57.

Plaintiff sued Defendant, alleging that: (1) four clauses of the CPA are unenforceable under Georgia law; (2) Defendant breached the CPA by charging excessive fees and not providing proper notice; and (3) Defendant is liable to Plaintiff for unjust enrichment (alternatively to the breach-of-contract claim). *Id.* at ¶¶ 83-106. The Court granted Defendant's motion to dismiss part of Count 2. (Dkt. 16). The Court declined to rule on the motion to dismiss Counts 1 and 3 because the parties could not agree on the operative CPA. *Id.* After the parties engaged in limited discovery, they agreed on the controlling contract, and Defendant moved for summary judgment on Counts 1 and 3 of Plaintiff's complaint. (Dkt. 26).[1]

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No

---

[1] The Court denied Plaintiff's motion under Rule 56(d) to defer summary judgment pending more discovery. (Dkt. 38).

genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'" *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The moving party bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. The movant is not, however, required to negate the non-movant's claim. Instead, the moving party may meet his burden by "showing – that is, pointing to the district court – that there is an absence of evidence to support the non-moving party's case." *Id.* at 324. After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.*

The Court views all evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment. "The requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 248 (emphasis in original).

## III. Analysis

### A. Count 1 – Declaratory Judgment

Plaintiff contends in Count 1 of its complaint that the CPA was a non-negotiable, take-it-or-leave-it contract with four clauses that are unenforceable under Georgia law. Dkt. 27 at 2. Plaintiff thus seeks a declaratory judgment invalidating each of those provisions. Defendant argues that all provisions of the CPA are valid and enforceable under Georgia law. The Court examines each provision individually.

#### i. Section 9.3

Section 9.3 of the CPA is a limitation-of-liability clause that provides:

> 9.3 **Limitation of Liability.** UNDER NO CIRCUMSTANCES SHALL THE AGGREGATE FINANCIAL RESPONSIBILITY OF WORLDPAY AND THE BANK FOR ANY FAILURE OF PERFORMANCE BY WORLDPAY OR THE BANK UNDER THIS AGREEMENT EXCEED THE FEES OR CHARGES PAID TO WORLDPAY BY CUSTOMER FOR THE TRANSACTION OR ACTIVITY THAT IS OR WAS THE SUBJECT OF THE ALLEGED FAILURE OF PERFORMANCE AND IN ANY EVENT, SUCH FINANCIAL RESPONSIBILITY SHALL NOT EXCEED THE

AGGREGATE AMOUNT OF FEES AND CHARGES PAID TO WORLDPAY PURSUANT TO THIS AGREEMENT IN THE THREE MONTH PERIOD PRECEDING THE EVENT THAT GAVE RISE TO THE CLAIM OF LIABILITY. FOR PURPOSES OF THIS SECTION 9.3, FEES OR CHARGES OF THE PAYMENT NETWORKS OR OTHER THIRD PARTIES PASSED THROUGH TO CUSTOMER PURSUANT TO THIS AGREEMENT SHALL NOT BE INCLUDED IN THE CALCULATION OF FEES AND CHARGES PAID TO WORLDPAY. IN NO EVENT SHALL THE BANK, WORLDPAY, OR THEIR RESPECTIVE AGENTS, OFFICERS, DIRECTORS, EMPLOYEES OR AFFILIATES BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR EXPEMPLARY DAMAGES OR CLAIMS BY CUSTOMER OR ANY THIRD PARTY RELATIVE TO THE TRANSACTIONS OR ACTIVITIES HEREUNDER, WHETHER OR NOT SUCH DAMAGES WERE FORESEEABLE OR SUCH PERSON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Dkt. 23 at 7.

In Georgia, "absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of a breach by the other party." *Piedmont Arbors Condo. Ass'n, Inc. v. BPI Constr. Co.*, 397 S.E.2d 611, 612 (Ga. App. 1990) (internal citations and quotations omitted). Georgia law states that, to be enforceable, a limitation-of-liability clause "must be explicit, prominent, clear and unambiguous." *Allstate Ins. Co. v. ADT, LLC,* No. 1:15-cv-517, 2015 WL 5737371, at *3 (N.D. Ga. Sept. 30, 2015)

(internal quotations and citations omitted). Plaintiff contends that Section 9.3 falls short of this standard. Dkt. 27 at 22.

The CPA is seven pages long. Dkt. 23 at 3-9. Each page has two columns of text. *See id*. Section 9.3 is located on the bottom of the first column on the fifth page and continues to the top of the second column on that page. *Id*. at 7. The length of the CPA and the location of Section 9.3 may suggest that the limitation of liability is not prominent. But it has many other characteristics that make it explicit, prominent, and clear.

First, this section of the CPA is set off in its own paragraph that prominently announces a limitation of liability. It appears under the conspicuous heading in all capital letters and bold font: "**SECTION 9. INDEMNIFICATION, DISCLAIMER, LIMITED LIABILITY.**" It also has a subheading in bold font: "**Limitation of Liability.**" The section is not hidden or less prominent than other text. Georgia law recognizes these features as making a limitation-of-liability clause prominent and explicit. *See Imaging Sys. Intern, Inc., v. Magnetic Resonance Plus, Inc.*, 490 S.E.2d 124, 128 (Ga. App. 1997) (finding limitation-of-liability clause enforceable because it was "set off in its own

paragraph with the heading 'LIMITATION OF LIABILITY' and with the key language all capitalized."). Indeed, Georgia courts have stricken clauses that do not contain these prominent features. *See JVC Am., Inc. v. Guardsmark LLC*, No. 1:05-cv-0681, 2006 WL 2443735, at *5 (N.D. Ga. Aug. 22, 2006) (holding limitation-of-liability clause unenforceable where it was neither set off in its own paragraph nor did it use any boldface type to "distinguish some terms and conditions from others"); *Parkside Ctr., Ltd. v. Chicagoland Vending, Inc.,* 552 S.E.2d 557, 560 (Ga. App. 2001) (refusing to enforce exculpatory clause not in a separate paragraph, had no paragraph heading, and was written in same typeface as all surrounding paragraphs).

Second, the text of Section 9.3 appears in all-capital letters. Only one other section of the contract appears in capital letters, the provision directly above Section 9.3, entitled "**9.2 Disclaimer of Warranties**."[2] The capital letters with which Defendant printed Section 9.3 bolster its prominence. The capitalization of Section 9.2 does not diminish this

---

[2] Although not relevant for this motion, the "Disclaimer of Warranties" clause is also subject to a conspicuousness requirement. *See Leland Indus., Inc. v. Suntek Indus., Inc.*, 362 S.E.2d 441 (Ga. App. 1987). That may explain the drafter's use of capital letters for Section 9.2.

finding of prominence because no subsections other than 9.2 and 9.3 appear in capital letters. *Compare Allstate Ins. Co.*, 2015 WL 5737371 at *5 (finding exculpatory clause printed in capital letters not prominent where "much of the [c]ontract" also appeared in capital letters).

Third, the operative language of the limitation-of-liability does not appear "far removed" from the heading announcing its presence. *Cf. id.* (finding exculpatory clause not prominent where "the important limiting language . . . [is] far removed from [the] heading"). Instead, Section 9.3 states from the start that it limits Defendant's liability for "any failure of performance . . . under this agreement." Dkt. 23 at 7. Thus, the operative language features prominently within the already prominent clause.

Finally, Section 9.3 uses clear and unambiguous language. It limits Defendant's liability to the fees and charges paid to it for any transaction or occurrence that might give rise to any claim, not to exceed total fees and charges in the three-month period preceding the event. *Id.* It also exempts third-party fees and charges paid to Defendant. *Id.* Section 9.3 is straightforward and clear.

In sum, Section 9.3 is explicit, prominent, clear, and unambiguous. It is strikingly similar to other limitation-of-liability provisions enforced

by Georgia courts. The Court enforces it as written and grants summary judgment against Plaintiff's declaratory judgment claim that Section 9.3 is unenforceable.

*ii. Section 7.5*

Section 7.5 of the CPA requires Plaintiff to notify Defendant of any overpayments, underpayments, or discrepancies within thirty days and prevents Plaintiff from recovering any wrongful payments not reported within that time:

> Customer shall be solely responsible for reviewing its statements from WorldPay (including statements provided online) and for reporting to WorldPay in writing, within 30 days of Customer's receipt . . . of any statement from WorldPay, any underpayments, overpayments or other discrepancies of any items reflected on such statements or related to the period covered by such statement, including, without limitation, discrepancies between the volume and/or value of transactions that Customer actually processed during the period indicated by the statement. Customer acknowledges and agrees that WorldPay and the Bank shall not be liable or otherwise responsible to Customer, and shall have no obligation to reimburse Customer, for any underpayment to Customer or other discrepancy that is not reported to WorldPay in writing within 30 days of Customer's receipt of the applicable statement.

Dkt. 23 at 6.

Plaintiff contends that this section is unenforceable under Georgia law for several reasons. First, Plaintiff contends that this provision is

not prominent enough.  Plaintiff seeks to apply the prominence standard – adopted for evaluating limitation-of-liability and exculpatory clauses – to this notice provision.  But Plaintiff cites no case supporting this argument, and the Court could find none.

To the contrary, courts applying Georgia law routinely enforce such provisions without applying any prominence test.  *See, e.g., Triad Constr. Co., Inc. v. Robert Half Int'l, Inc.*, No. 1:13-cv-3581, 2016 WL 9051798, at *4 (N.D. Ga. Feb. 24, 2016) (discussing Georgia courts' enforcement of notice provisions and enforcing notice provision without applying prominence test); *In re Colony Square Co.*, 843 F.2d 479, 481 (11th Cir. 1988) ("when a default clause contains a notice provision, it must be strictly followed . . . and summary judgment is warranted if notice is not given"); *Pillar Dev., Inc. v. Fuqua Constr. Co., Inc.,* 645 S.E.2d 64, 66 (Ga. App. 2007) (holding that "[w]here a contract contains provisions requiring written notice of a claim for breach, the failure to give notice as required or to show waiver by the party entitled to notice is an independent bar to the maintenance of a successful cause of action on the contract") (internal quotations omitted) (citing *Orkin Exterminating Co. v. Stevens,* 203 S.E.2d 587 (Ga. App. 1973)).

This Court likewise declines to extend the prominence requirement to a species of contractual provision to which Georgia courts have not applied it. *Allstate Ins. Co. v. ADT, LLC*, 194 F. Supp. 3d 1331, 1337 (N.D. Ga. 2016) (declining to extend prominence test to subrogation-waiver provisions and recognizing that Georgia contract law should be interpreted "consistent with Georgia's respect for 'parties' sacrosanct freedom of contract' ").[3]

Plaintiff next argues that Section 7.5 is unconscionable. Georgia law distinguishes between procedural and substantive unconscionability. *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 772 (Ga. 1996). But, to invalidate a contractual provision as unconscionable, Georgia law requires "a certain quantum" of both procedural and substantive unconscionability. *Id.* at 773 n.6. Georgia courts set a high bar for

---

[3] Plaintiff's argument that the term "items" should be interpreted to refer only to card-payment transactions also fails. As noted in the Court's order denying Plaintiff's Rule 56(d) motion, Section 7.5 "unambiguously applies to more than just card transactions when discussing a customer's discrepancy-reporting obligations." Dkt. 38 at 7-8. A customer like Plaintiff has the obligation to report all discrepancies – not just card payments – within thirty days from receipt of the statement. If the customer does not, "WorldPay and the Bank shall not be liable or otherwise responsible" to the customer for any such discrepancies. Dkt. 23 at 6.

unconscionability. *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1310 (N.D. Ga. 2012). The Georgia Supreme Court has explained, "[a]n unconscionable contract is such an agreement as no sane man not acting under a delusion would make, and that no honest man would take advantage of." *R.L. Kimsey Cotton Co., Inc. v. Ferguson*, 214 S.E.2d 360, 363 (Ga. 1975) (internal quotations omitted). Put differently, an unconscionable term "shock[s] the conscience." *BMW Fin. Servs., N.A., Inc. v. Smoke Rise Corp.*, 486 S.E.2d 629, 630 (Ga. App. 1997).[4]

In assessing substantive unconscionability, the Court "looks to the contractual terms themselves." *NEC Techs., Inc.*, 478 S.E.2d at 771. The Court should consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* at 772.

As explained above, Georgia courts routinely enforce notice provisions like the one in the CPA. This suggests such provisions are not – per se – unconscionable. *See Triad Constr. Co., Inc.*, 2016 WL 9051798

---

[4] Because the Court finds that the CPA's provisions are not substantively unconscionable, the Court need not address whether they are procedurally unconscionable. *Clark*, 914 F. Supp. 2d at 1311 (recognizing that unconscionability claim fails as a matter of law when party fails to show substantive unconscionability).

at *4 (rejecting claim that notice provision was unconscionable because the "legal argument is without support"). Nor does the Court find the CPA so commercially unreasonable that it "shock[s] the conscience." *BMW Fin. Servs., N.A., Inc.*, 486 S.E.2d at 630.

Apparently, Plaintiff and Defendant agreed Plaintiff would be in the best position to review the monthly statements and identify discrepancies. Their decision is not shocking. Plaintiff would only receive one statement per month and would have familiarity with the transactions that it conducted at the bakery. Defendant, on the other hand, issued many (perhaps thousands) of statements per month and had no first-hand knowledge of the bakery's transactions. The parties' decision to allocate responsibility for identifying errors to Plaintiff was reasonable.

So was the decision to require Plaintiff to notify Defendant of any errors within thirty days. After all, it would be easier for the parties to resolve disputes while the information is current rather than allowing time to run, information to become stale, or errors to amass. *See Triad Constr. Co., Inc. v. Robert Half Int'l, Inc.*, 679 F. App'x 748, 753 n.6 (11th Cir. 2017) (recognizing that a notice provision "ensur[es] that the party

defending the claim has the opportunity to investigate the underlying facts while they are fresh").

The parties also decided that Defendant will not be liable for unreported discrepancies – a simple way of ensuring that Plaintiff fulfilled its obligation to review the statements and identify discrepancies. As explained above, Georgia courts have not found such a requirement unconscionable. And while Section 7.5 requires Plaintiff to provide notice of discrepancies within thirty days, it does not require Plaintiff to file a claim against Defendant within that time. Plaintiff has plenty of time to resolve any discrepancy, whether through a lawsuit or otherwise. The Court does not find the parties' decision to contract in this way commercially unreasonable, shocking, or appalling. The Court thus grants summary judgment against Plaintiff's declaratory judgment claim alleging that Section 7.5 is unenforceable.

### iii. Section 11.9

Next, Plaintiff challenges Section 11.9. The provision, entitled "Entire Agreement; Modification, Waiver; Section References," allows Defendant to modify the agreement (including fees) with notice, but also

allows Plaintiff to terminate the CPA without paying a termination fee in some situations:

> WorldPay and the Bank shall have the right to modify the terms and conditions of this Agreement, which right shall include, without limitation, the ability to modify, amend, or supplement the fees set forth on the Customer Processing Agreement, by providing notice thereof to Customer (the "Change Notice"). Such modifications, amendments, or supplements shall become effective upon the date stated in the Change Notice, provided the date shall not be fewer than 15 days after the date of the Change Notice, unless the notice relates to a change in the Rules made by the Payment Network, a change in the fees charged by the Payment Networks, or a change in applicable laws, rules or regulations (collectively, a "Third Party Change"), in which case the modification, amendment or supplement shall be effective upon the earlier of the date stated in the Change Notice or upon the date the Third Party Change is or was implemented by the Payment Network or applicable governing authority. In the event of any modification of this Agreement by WorldPay or the Bank as contemplated in this Section 11.9, Customer shall the right to terminate this Agreement, without the payment of any early termination fee otherwise payable pursuant to Section 10.3, by providing written notice thereof to WorldPay and the Bank, provided such notice must be given within 15 days following the date of the Change Notice, and provided further, no such right to terminate shall apply in the event the modification relates to a Third Party Change.

Dkt. 23 at 9.

Plaintiff claims that Section 11.9 is illusory, lacks mutuality, violates public policy, and is unconscionable. Plaintiff cites no authority to support its claim. *See* Dkt. 27 at 23-25. Instead, Plaintiff argues that

the way Defendant increased fees somehow renders the provision substantively unconscionable. As the Court noted in its order on Plaintiff's Rule 56(d) motion, Plaintiff's argument identifies theories of breach and alleges that Defendant failed to follow its obligations under Section 11.9. (Dkt. 38). But unconscionability does not turn on performance; the question is whether the terms were unconscionable "at the time of the making of the contract." Dkt. 38 at 12 (quoting *NEC Techs., Inc.*, 478 S.E.2d at 771).

Section 11.9 does not "shock the conscience." *BMW Fin. Servs., N.A., Inc.*, 486 S.E.2d at 630. Although it allows Defendant to change the terms (including fees) of the CPA, Section 11.9 requires Defendant to provide notice to Plaintiff before the changes take place. It also allows Plaintiff the opportunity to terminate the contract without a penalty if it does not like the changes. This is a fair bargain. It is not something that only a man "acting under a delusion would make" or that "no honest man would take advantage of." *R.L. Kimsey*, 214 S.E.2d at 363.

That the contract does not allow for early termination (without the fee) if a Payment Network makes a change does not render the provision any less enforceable. The parties allocated to Plaintiff the risk that a

Payment Network might change fees and that those changes might impact fees due under the CPA. The parties agreed to the allocation and it does not shock the conscience.

Although alleging in the complaint that Section 11.9 is "illusory" or "lacks mutuality," Plaintiff does not advance those allegations in its Response to Defendant's Motion for Partial Summary Judgment. *See* Dkt. 27. And they would not succeed.

"[A] contract is invalid when one of the parties merely makes an 'illusory promise' to perform. An 'illusory promise exists when 'words of promise . . . by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue." *Douglas v. Johnson Real Estate Inv'rs, LLC*, No. 1:11-cv-567, 2011 WL 13177544, at *1 (N.D. Ga. Oct. 11, 2011) (internal quotations omitted, alterations in original). The Eleventh Circuit has found that an agreement is not illusory under Georgia law when a party may modify the contract only upon notice. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1375 (11th Cir. 2005) (finding change-in-terms provision enforceable where party must provide notice before modifying). So too here. Defendant must comply with the

CPA. And the change-in-terms provision requires Defendant to give the customer notice upon any change in terms: it is not illusory or lacking mutuality of obligation.

For the reasons stated above, the Court grants summary judgment against Plaintiff's declaratory judgment claim that Section 11.9 is unenforceable.

### iv. Section 11.4

Finally, Plaintiff seeks a declaratory judgment that Section 11.4 is unenforceable. This section, entitled "Attorneys' Fees" provides:

> In the event the Bank or WorldPay shall employ legal counsel or bring an action at law or other proceeding against Customer to enforce any of the terms, covenants, or conditions hereof, Customer shall pay to the Bank and/or WorldPay its reasonable attorneys' fees and costs so incurred.

Dkt. 23 at 8. Defendant contends that Plaintiff's claim is moot because Defendant stipulated that it would not "seek to recover fees on unmeritorious claims or defenses." Dkt. 31 at 11. But the stipulation, even if binding, does not resolve the dispute. Plaintiff challenges the provision as unconscionable if Plaintiff would have to pay Defendant's legal fees at all for this action under Section 11.4.

The Court finds that Section 11.4 does not apply here. The provision – by its terms – applies when Defendant hires legal counsel or sues to enforce any terms of the CPA. Dkt. 23 at 8. Defendant has not done that. Instead, Plaintiff filed this suit and Defendant filed no counterclaim to "enforce" any provision of the contract. Section 11.4 simply does not apply.

Even if the phrase "to enforce" were ambiguous, the Court would reach the same interpretation. Georgia law requires courts to interpret ambiguous contract terms against the drafter. *Kennedy v. Brand Banking Co.*, 266 S.E.2d 154, 157 (Ga. 1980). Defendant drafted the CPA. So construing any ambiguity in the phrase "to enforce" against Defendant, would lead to the conclusion that a customer would only be responsible for WorldPay's attorneys' fees when WorldPay starts an action against that customer. Because Section 11.4 does not apply, the Court need not address the unconscionability issue and dismisses Plaintiff's declaratory judgment claim with respect to Section 11.4.

## B. Count 3 – Unjust Enrichment

In Count 3, Plaintiff brings a claim for unjust enrichment, in the alternative to its breach-of-contract claim if the Court finds the CPA

unenforceable. The parties agree that "[u]nder Georgia law, unjust enrichment is only available in the absence of an enforceable contract." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009). Because the Court has determined that the Sections 7.5, 9.3, 11.4, and 11.9 of the CPA are enforceable, Georgia law bars Plaintiff's unjust enrichment claim.

## IV. Conclusion

The Court **GRANTS** Defendant's Motion for Partial Summary Judgment (Dkt. 26).

**IT IS SO ORDERED.**

Dated: October 16, 2018
Atlanta, Georgia

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE